**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

MICHELLE SNITSELAAR,

        Plaintiff,

vs.

UNUM LIFE INSURANCE COMPANY
OF AMERICA and MOUNT MERCY
UNIVERSITY,

        Defendants.

No. 17-CV-14-LRR

**ORDER**

## TABLE OF CONTENTS

I.     **INTRODUCTION**................................................................2

II.    **RELEVANT PROCEDURAL BACKGROUND**..............................2

III.   **SUBJECT MATTER JURISDICTION**......................................3

IV.   **RELEVANT FACTUAL BACKGROUND**...................................3

     *A.*    *The Parties*...............................................................3
     *B.*    *Overview of the Dispute*................................................4

V.    **ANALYSIS**...................................................................6

     *A.*    *Snitselaar's Claim Against Unum for Violation of ERISA (Count I)*......6
         *1.*    *Standard of review*............................................6
         *2.*    *Parties' arguments*............................................8
         *3.*    *Applicable law*...............................................10
         *4.*    *Application*...................................................12
     *B.*    *Snitselaar's Claim Against Mount Mercy for Breach of Fiduciary
         Duty (Count II)*..........................................................13
         *1.*    *Standard of review*...........................................13
         *2.*    *Parties' arguments*...........................................13
         *3.*    *Applicable law*...............................................15
         *4.*    *Application*...................................................16
     *C.*    *Attorney Fees*..........................................................20

VI.   **CONCLUSION**..............................................................20

## I.  INTRODUCTION

The matter before the court is Plaintiff Michelle Snitselaar's Amended Complaint (docket no. 25).

## II.  RELEVANT PROCEDURAL BACKGROUND

On January 20, 2017, Snitselaar filed a Petition at Law ("Petition") (docket no. 2) in the Iowa District Court for Linn County, alleging claims under Iowa law, for breach of contract and frustration of reasonable expectations against Defendant Unum Life Insurance Company of America ("Unum") and breach of fiduciary duty against Defendant Mount Mercy University ("Mount Mercy"), in the denial of life insurance death benefits.  *See generally* Petition ¶¶ 17-38.  On February 10, 2017, Unum and Mount Mercy jointly filed a Notice of Removal (docket no. 1), bringing the case before the court.

On March 24, 2017, Snitselaar filed an Amended Complaint and Jury Demand ("AC&JD") (docket no. 10), alleging a claim for violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and an Iowa state law claim for frustration of reasonable expectations against Unum (Counts I and II).  *See generally* AC&JD ¶¶ 23-29.  The AC&JD also alleged an Iowa state law claim for breach of fiduciary duty against Mount Mercy.  *Id*. ¶¶ 30-42.  On April 6, 2017, Unum filed a "Motion to Strike Jury Demand" (docket no. 11) and a "Motion to Dismiss Count II" (docket no. 12) of the AC&JD.  On the same date, Unum also filed an "Answer to Count I" (docket no. 13) of the AC&JD, generally denying liability and asserting affirmative defenses.  On April 13, 2017, Mount Mercy filed a Motion to Dismiss Count III of the AC&JD (docket no. 14).

On May 10, 2017, Snitselaar filed a "Motion for Leave to Amend" (docket no. 22) the AC&JD.  In the Motion for Leave to Amend, Snitselaar sought "to amend [the AC&JD] to remove [the] Jury Demand and Count II  Reasonable Expectations and to further amend [the AC&JD] to recast [] Count III [as a claim for]Breach of Fiduciary Duty under ERISA, and not as a state law claim."  Motion for Leave to Amend at 2.  On May

11, 2017, the Motion for Leave to Amend was granted. *See* May 11, 2017 Order (docket no. 24) at 1.

The Amended Complaint presently before the court was filed on May 11, 2017, alleging that: (1) Unum wrongfully denied Snitselaar's claim for life insurance death benefits, thereby violating ERISA, 29 U.S.C. §§ 1001 et seq. (Count I), *see* Amended Complaint ¶¶ 16-19, 22-27; and (2) Mount Mercy breached its fiduciary duty, thereby violating ERISA, 29 U.S.C. §§ 1001 et seq. (Count II), *see* Amended Complaint ¶¶ 33-35, 38-44. On May 31, 2017, Mount Mercy filed an Answer (docket no. 27), generally denying liability and asserting affirmative defenses.[1] On September 6, 2017, Snitselaar filed the Plaintiff's Brief (docket no. 37). On November 16, 2017, Mount Mercy filed a Defendant's Brief ("Mount Mercy Brief") (docket no. 40). On that same date, Unum also filed a Defendant's Brief ("Unum Brief") (docket no. 41). On January 10, 2018, Sniteslaar filed a Reply Brief (docket no. 44).

Neither party requests oral argument, and the court finds that oral argument is unnecessary. The case is fully submitted and ready for decision.

### III.  SUBJECT MATTER JURISDICTION

The court has jurisdiction over the instant action because it arises under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV.  RELEVANT FACTUAL BACKGROUND

#### A.  The Parties

Snitselaar is a resident of Marion, Linn County, Iowa. Amended Complaint ¶ 1.

---

[1] Unum did not file an answer to the Amended Complaint filed on May 11, 2017. Apparently, Unum relies on its Answer to Count I of the AC&JD. Count I of the AC&JD is nearly identical to Count I of the Amended Complaint. *Compare* docket no. 10 with docket no. 25.

Unum Life is a foreign corporation whose principal place of business is located outside the State of Iowa. *Id*. ¶ 2. Mount Mercy is an Iowa domestic non-profit whose principal place of business is located in Cedar Rapids, Iowa. *Id*. ¶ 4.

## B. Overview of the Dispute

Snitselaar has been employed by Mount Mercy since 2007. *Id*. ¶ 9. Snitselaar is a participant in the Mount Mercy University Welfare Plan ("the Plan"). *Id*. ¶¶ 10, 12. Mount Mercy is the named Plan Administrator and fiduciary of the Plan. *Id*. ¶ 12. The Plan is funded by a group life insurance policy issued by Unum. *See* Administrative Record ("AR") (docket no. 34) at 72. Mount Mercy delegated discretionary authority to Unum to make benefit determinations under the Plan. *Id*. at 50.

Snitselaar enrolled in the Plan in 2010. *Id*. at 19, 34. At the time of her enrollment, Snitselaar was married to Gerard J. Snitselaar ("Gerard"). Amended Complaint ¶¶ 8, 11. Under the Plan's group life insurance policy, Gerard was eligible for coverage because he was Snitselaar's "lawful spouse." AR at 54. Snitselaar elected to have Gerard covered under the Plan's group policy. Amended Complaint ¶ 11. The total amount of dependent life insurance under the group policy was $60,000, including $10,000 basic dependent life insurance coverage and $50,000 dependent supplemental coverage. *Id*.; AR at 5, 19. Snitselaar was the beneficiary for the dependent coverage. AR at 14 (identifying Snitselaar as the dependent coverage beneficiary), 58 (language in the "Benefit Information" section of the group Policy discussing "how much will Unum pay you [(the employee/Snitselaar)] if Unum approves your dependent's death claim"), 70 (group Policy defining "You" as "an employee who is eligible" for Unum coverage), 88 (claim worksheet for Gerard identifying Snitselaar as the beneficiary).

The group policy provides that a dependent spouse's coverage ends on "the date of divorce or annulment." AR at 56. When coverage ends under the group policy, a dependent may "convert [his or her] coverages to individual life policies, without evidence

of insurability." *Id*. at 60. The policy requires that "[y]ou and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date . . . you or your dependents no longer are eligible to participate in the coverage of the [P]lan." *Id*.

Snitselaar's and Gerard's divorce was finalized on February 26, 2015. *Id*. at 141-42. Gerard died on May 13, 2015. Amended Complaint ¶ 8. On June 4, 2015, Snitselaar submitted a claim for life insurance benefits under the group policy. AR at 19-23. On June 25, 2015, Unum denied Snitselaar's claim for benefits. Amended Complaint ¶ 16; AR at 150. Unum explained that:

> Mount Mercy University's [g]roup [l]ife policy states an individual must be legally married to or separated from the employee to be covered as a dependent spouse. Additionally, the policy states that dependent coverage ends the date of a divorce or annulment. . . . Per our telephone conversation on June 11, 2015, you indicated that your divorce was finalized in February, 2015. The divorce decree we received was filed with the courts on February 26, 2015. Therefore, the dependent life insurance coverage terminated when the divorce was finalized. Since [Gerard] was not covered under the policy on his date of death, May 13, 2015, benefits are not payable for this claim.

AR at 151.

On September 22, 2015, Snitselaar submitted a timely appeal of Unum's decision. *Id*. at 190. In her appeal, Snitselaar noted that, "[w]hile signing up for both of the[] voluntary [l]ife [i]nsurance [policies], we were advised you could not lose the insurance for life changes after the two year waiting period, and were never informed about divorce affecting the policy." *Id*. at 191. According to Snitselaar, she was only provided with enrollment forms for the basic life insurance coverage and the supplemental coverage. *Id*. at 191-92. Snitselaar stated:

> We were not informed that there was a policy available to

> examine. We were just told that it was a group policy and it
> would provide the coverage we elected. Nowhere on either of
> these forms did it state that a divorce would affect the
> coverage. The two forms along with a spreadsheet of "listed
> monthly cost" were the only documents provided.

*Id*. at 192. Snitselaar also noted that, while her claim was denied on June 25, 2015, "[t]he premiums for [both life insurance policies] continued to be taken out of [her] pay checks up through [her] payroll check dated June 26, 2015." *Id*. at 193. Snitselaar asserted that "neither Gerard nor [she] were ever informed either in writing or verbally of [their] rights to convert[] the policy to an individual life policy without evidence of insurability after the divorce was finalized." *Id*. at 194.

On October 21, 2015, Unum issued its appeal decision, upholding its denial of benefits. Unum explained that it "determined the decision on the [group] [l]ife [i]nsurance claims for Gerard . . . was correct" because Gerard "was no longer eligible for coverage under the policies because he was no longer an eligible dependent as of Feb[ruary] 26, 2015" and "was not covered on the date of his death." *Id*. at 212.

## V. ANALYSIS

### A. Snitselaar's Claim Against Unum for Violation of ERISA (Count I)

### 1. Standard of review

The parties generally agree that the court should review Unum's decision for abuse of discretion.[2] The abuse of discretion standard of review is extremely deferential and

---

[2] Snitselaar notes that "Unum in this case was both the evaluator of whether [her] policy on the life of Gerard was eligible for conversion and the party obligated for paying life insurance benefits." Plaintiff's Brief at 3. Snitselaar asserts that "[t]his conflict of interest needs to be weighed in determining whether Unum abused its discretion in making its determination to deny benefits." *Id*. While a reviewing court is required to "account for conflicts of interest in determining whether an administrator has abused discretion[,]" Eighth Circuit "precedent . . . has consistently rejected the notion that the mere presence of a potential conflict of interest is sufficient to warrant a less deferential standard." *Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 660 (8th Cir. 2017). "While a conflict of

reflects the "general hesitancy to interfere with the administration of a benefits plan." *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 883 (8th Cir. 2002) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). "Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; 'i.e., supported by substantial evidence.'" *Id.* (quoting *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001)).

The court must affirm the plan administrator's decision "if a reasonable person *could* have reached a similar decision, given the evidence before him [or her], not that a reasonable person *would* have reached that decision." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014) (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010). A decision is reasonable if it is supported by substantial evidence. *See Wilcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700 (8th Cir. 2009). Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* (quoting *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001)). Although a plan administrator may not ignore relevant evidence without abusing his or her discretion, *see id.* at 701, only the evidence available to the plan administrator at the time of benefits denial is relevant to the court's review, *see King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005). *See also Gerhardt*, 736 F.3d at 780 ("A plan administrator abuses its discretion when it ignores relevant evidence." (quoting *Wilcox*, 552 F.3d at 701)).

---

interest must be weighed as a factor, . . . the weight afforded to it will depend on the facts presented to the court." *Id.* at 660-61 (citation and quotation omitted). Here, Snitselaar presents no facts that Unum was biased in its decision making. Accordingly, the court affords only the bare minimum of weight to Unum's conflict of insterest.

## 2.    *Parties' arguments*

Snitselaar contends that Unum "breached its insurance contract with [her] in denying [her] claims for death benefits." Plaintiff's Brief at 3. Snitselaar asserts that the group life insurance policy does not contain the provision required by Iowa Code § 509.2(7). *Id*. at 4. Iowa Code § 509.2 states in relevant part that, "[n]o policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions." Iowa Code § 509.2(7) specifically requires:

> A provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which the person is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in subsections 8 to 10, inclusive, following if applicable.

Iowa Code § 509.2(8) requires inclusion of:

> A provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to the person by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one days after such termination . . . .

Snitselaar asserts that "the group policy does not contain the provision required by Section 509.2(7)." Plaintiff's Brief at 4. Snitselaar maintains that § 509.2(7) is not preempted by ERISA. *Id*. at 5-7. Snitselaar argues that, because § 509.2(7) is not preempted by ERISA, "Unum breached its contractual obligations" and Unum is "liable to [Snitselaar] for full death benefits owed under the two policies covering the life of Gerard." *Id*. at 7.

Unum argues that Snitselaar's claim under Iowa Code § 509.2(7) is preempted by ERISA, and therefore, must be dismissed. *See* Unum Brief at 10. Unum asserts that

"Section 509.2(7) does not substantially affect the risk pooling arrangement between the insurer and the insured and, therefore, is not 'saved' from preemption under [29 U.S.C. §] 1144(b)(2)(A)." *Id*. at 11. Specifically, Unum argues that § 509.2(7) "deals solely with providing the insured participant notice of the risk pooling arrangement or coverage that has already been determined." *Id*. at 12. Thus, Unum contends that § 509.2(7) "is not 'saved' from preemption by [§] 1144(b)(2)(A)." *Id*.

Unum further argues that, even if the group life insurance policy was amended or reformed to include the requirements of § 509.2(7), such an amendment or reformation would not be "material to [Unum's] interpretation of the [p]olicies and determination of [Snitselaar's] claim." *Id*. at 13. Specifically, Unum argues that:

> Gera[r]d ceased to be a dependent covered under the Plan upon his divorce from [Snitselaar]. Whether or not the [p]olicies included a statement that the insurer provide the policyholder with an individual certificate has absolutely nothing to do with that determination. Further, Gera[r]d never exercised his conversion rights and therefore did not obtain an individual life insurance policy. Reforming the [p]olicies to include language requiring [Unum] to provide Mount Mercy with an individual certificate containing a statement of the insurance coverage under the [p]olicies does not create insurance coverage for Gera[r]d.

*Id*.

In the Reply, Snitselaar relies on *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013) for the proposition that, if an ERISA plan includes an insurance policy, then state insurance law requirements become plan terms for purposes of a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Reply at 2 (citing *Larson*, 723 F.3d at 913, in turn citing, *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375-76 (1999)). Snitselaar argues that, "[p]ursuant to the *Larson* analysis, and United States Supreme Court holdings, the contract terms mandated by § 509.2(7) become part of the group policy for purposes of the claim for benefits[.]" *Id*. Snitselaar maintains that Unum "breached the

9

contract by not delivering the required certificate to Mount Mercy, along with directives that it be delivered to [her]." *Id*. As a result, Snitselaar claims that, "at no time prior to her divorce from Gerard or his death, was [she] made aware of the conversion rights to which she was entitled and the steps necessary to make such a conversion." *Id*. Snitselaar concludes that, "[a]s [Unum's] group policy failed to contain the provision required by Iowa Code § 509.[2(7)], . . . the denial of benefits determination [Unum] made was on its face unreasonable[,]" and therefore, Unum abused its discretion in denying her benefits. *Id*. at 5.

### 3. Applicable law

"To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005) (quoting *Minn. Chapter of Associated Builders & Contractors, Inc. v. Minn. Dept. of Pub. Safety*, 267 F.3d 807, 810-11 (8th Cir. 2001)). ERISA provides for two types of preemption: "'complete preemption' under ERISA § 502, 29 U.S.C. § 1132, and 'express preemption' under ERISA § 514, 29 U.S.C. § 1144." *Prudential*, 413 F.3d at 907. "Complete preemption occurs whenever Congress 'so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id*. (alteration in original) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). Express preemption, by contrast, "preempts any state law that relate[s] to any employee benefit plan." *Prudential*, 413 F.3d at 907 (alteration in original) (quotation omitted).

29 U.S.C. § 1144(a), ERISA's "express preemption" clause states that:

> Except as provided in subsection (b) of this section, the
> provisions of this subchapter and subchapter III shall supersede
> any and all State laws insofar as they may now or hereafter

> relate to any employee benefit plan described in section
> 1003(a) of this title and not exempt under section 1003(b) of
> this title.

"ERISA's broad preemption of state law is limited by the 'savings clause,' under which ERISA shall not 'be constructed to exempt or relieve any person from any law of any State which regulates insurance. . . .'" *Prudential*, 413 F.3d at 908 (quoting 29 U.S.C. § 1144(b)(2)(A)). In *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), the Supreme Court held that "for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. . . . Second . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*. at 341-42. The risk pooling arrangement between insurer and insured is substantially affected when the scope of permissible bargains between insurers and insureds is altered. *Id*. at 338-39.

In *Larson*, the Seventh Circuit Court of Appeals noted that "[t]he Supreme Court has held that when an ERISA plan includes an insurance policy, the requirements imposed by state insurance law become plan terms for purposes of a claim for benefits under § 1132(a)(1)(B)." 723 F.3d at 912 (citing *Ward*, 526 U.S. at 375-76). In *Ward*, the Supreme Court stated that the Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A)." 526 U.S. at 375 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 758 (1985)). Relying on *Ward*, the Seventh Circuit concluded that "when an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms." *Larson*, 723 F.3d at 912; *see also Huang v. Life Ins. Co. of N. Am.*, 47 F.Supp.3d 890, 901 (E.D. Mo. Sept. 16, 2014) (relying on *Ward* and *Larson* for the proposition that state laws regulating insurance which mandate contract terms are saved from preemption under § 1144(b)(2)(A)). However, "an ERISA disclosure violation does not entitle a participant

or beneficiary to benefits to which he [or she] is not entitled [to] under the plan." *Palmisano v. Allina Health Sys. Inc.*, 190 F.3d 881, 888-89 (8th Cir. 1999).

### 4.    *Application*

In order for Snitselaar to have a claim against Unum, Iowa Code § 509.2(7) must not be preempted by ERISA. § 509.2(7) requires an insurer to "issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which the person is entitled." However, § 509.2(7) does not alter the scope of the bargain between the insured and the insurer. Therefore, under the second prong of the *Miller* test, Snitselaar's claim against Unum is preempted because risk pooling is not affected by § 509.2(7). 538 U.S. at 338-42.

Even if the court were to assume that, under *Ward* and *Larson* that "the contract terms mandated by § 509.2(7) become part of the group policy for purposes of the claim for benefits," Snitselaar's claim against Unum still fails. *See* Reply at 2. Snitselaar argues that Unum breached the insurance contract and abused its discretion in denying her claim for benefits. *See* Plaintiff's Brief at 3-7; Reply 1-5. However, Unum's breach of the insurance contract   failing to include the provision set forth in § 509.2(7)   is not material to Unum's interpretation of the group insurance policy and determination of Snitselaar's claim. Under the group policy, Gerard ceased to be a dependent covered under the Plan upon his divorce from Snitselaar. Further, Gerard never exercised his conversion rights and did not obtain an individual life insurance policy. Regardless of whether or not the group policy included the provision set forth in § 509.2(7), Gerard, under the terms of the group policy, was not covered under the Plan upon his divorce from Snitselaar. Unum did not abuse its discretion in denying Snitselaar's claim for benefits. *See Prezioso*, 748 F.3d at 805 (providing that a decision regarding benefits must be affirmed "if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision"). Further, under the circumstances

presented here, any disclosure failure by Unum pursuant to § 509.2(7) does not entitle Snitselaar to benefits because she was not entitled to benefits under the terms of the Plan. *See Palmisano*, 190 F.3d at 888-89 (providing that "an ERISA disclosure violation does not entitle a participant or beneficiary to benefits to which he [or she] is not entitled to under the [p]lan"). The court finds that Unum did not abuse its discretion in interpreting the terms of the Plan and declines to reverse Unum's decision on the basis that it failed to disclose information to Snitselaar pursuant to § 509.2(7). Accordingly, Unum's decision is affirmed.

**B. Snitselaar's Claim Against Mount Mercy for Breach of Fiduciary Duty (Count II)**

### 1. *Standard of review*

Neither party addresses the standard of review for a claim under 29 U.S.C. § 1132(a)(3). In *Moore v. Lafayette Life Ins. Co.*, the Sixth Circuit Court of Appeals determined that the district court properly reviewed a § 1132(a)(3) breach of fiduciary duty claim de novo because "[c]laims for breaches of fiduciary duty and promissory estoppel are not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision." 458 F.3d 416, 427 (6th Cir. 2006); *see also Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 616 (6th Cir. 2012) (providing for de novo review in § 1132(a)(3) breach of fiduciary duty claims). Accordingly, the court shall apply de novo review to Snitselaar's breach of fiduciary duty claim against Mount Mercy.

### 2. *Parties' arguments*

Snitselaar argues that Mount Mercy breached its fiduciary duty by failing to provide to her a summary plan description and/or certificate of insurance from Unum as required by 29 U.S.C. § 1022 and Iowa Code § 509.2(7). *See* Plaintiff's Brief at 9. Snitselaar maintains that she did not receive the required summary plan description or certificate of insurance from Mount Mercy, and therefore, "was never aware of her conversion rights

with respect to her ex-spouse Gerard." *Id*. Snitselaar argues that, because she did not receive the summary plan description or certificate of insurance, she "did not exercise the conversion rights and her claims were denied." *Id*. Snitselaar concludes that she is entitled to "make-whole, monetary relief" from Mount Mercy pursuant to 29 U.S.C. § 1132(a)(3). *Id*.

In response, Mount Mercy argues that Snitselaar's breach of fiduciary duty claim is barred because it duplicates her claim for benefits against Unum. *See generally* Mount Mercy's Brief at 8-9. Mount Mercy also argues that "the subject plan complies with Iowa Code section 509.2" and "any non-substantive differences between the language of the Iowa statute and the Plan documents do not constitute an actionable breach of fiduciary duty." *Id*. at 9. Specifically, Mount Mercy argues that the Plan complied with the terms of § 509.2(7). *Id*. at 10. Lastly, Mount Mercy argues that "any damages incurred by Snitselaar were caused by her reliance on inaccurate advice by her divorce attorney, and not by any actions by Mount Mercy." *Id*. at 12. Mount Mercy maintains that, "[b]ecause Snitselaar cannot establish causation, no relief is available under ERISA." *Id*. at 14. Mount Mercy concludes that, "[i]f Snitselaar or Gerard failed to exercise their conversion rights due to their reliance on their divorce attorneys' advice that coverage continued, it is unfortunate, however, that reliance is not attributable to Unum or Mount Mercy and is not actionable under ERISA." *Id*.

In the Reply, Snitselaar points out that in addition to the requirements of § 509.2(7), 29 U.S.C. § 1024(b)(1) also requires that a plan administrator provide all plan participants a copy of the summary plan description. *See* Reply at 5. Snitselaar argues that "Mount Mercy did not furnish a copy of the certificate of coverage or [s]ummary of [b]enefits to [her] until after Gerard's death. This is not disputed. Mount Mercy clearly breached its duty under § 1024(b)(1) by failing to timely deliver the certificate of coverage or [s]ummary of [b]enefits." *Id*. Snitselaar maintains that she has shown both harm and

causation. *Id*. at 6. Snitselaar asserts that the harm to her was Unum's denial of benefits. *Id*. Snitselaar further asserts that "[i]t is without question that Mount Mercy's failure to provide a certificate of insurance or summary plan description to [her] was the direct and only cause of [her] harm." *Id*. Lastly, Snitselaar argues that her claim against Mount Mercy is not duplicative. *See generally id*. at 6-7.

### 3.   *Applicable law*

A cause of action under 29 U.S.C. § 1132(a)(3) allows:

> a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

*Id*.; *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 443-44 (2011) (recognizing that an equitable claim for surcharge, reformation or estoppel may be permitted under ERISA for a breach of fiduciary duty); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 722 (8th Cir. 2014) (recognizing that *Amara* changed the legal landscape by permitting equitable remedy under ERISA for a plan administrator's breach of fiduciary duties).

The Supreme Court described the equitable remedy of surcharge under § 1132(a)(3) as follows:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."
>
> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

*Amara*, 563 U.S. at 441-42 (internal citations and citations to authority omitted). In order "[t]o obtain relief under the surcharge theory, a plan participant is required to show harm

resulting from the plan administrator's breach of a fiduciary duty." *Silva*, 762 F.3d at 722; *see also Amara*, 563 U.S. at 444 ("We believe that, to obtain relief by surcharge for violations of §§ [1022 and 1024(b)], a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation."). Recovery under § 1132(a)(3) on the surcharge theory, allows for "make-whole, monetary relief" in the amount of benefits owed under the plan. *See Silva*, 762 F.3d at 724 (collecting cases). Plan participants may assert both a claim for denial of benefits and a claim for breach of fiduciary duty, so long as each claim asserts a different theory of liability. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017).

A plan administrator breaches its fiduciary duty when it fails to provide a plan participant with the necessary information regarding a plan. *Silva*, 762 F.3d at 721. Under 29 U.S.C. § 1024(b), "[p]ublication of the summary plan description . . . shall be made to participants and beneficiaries . . . as follows: (1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description." *See also* 29 U.S.C. § 1022(a) ("A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title."). 29 U.S.C. § 1022(b) provides in pertinent part that "[t]he summary plan description shall contain . . . the plan's requirements respecting eligibility for participation and benefits . . . [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits. . . ." The Second Circuit Court of Appeals has explained that "ERISA's disclosure provisions were enacted to 'ensur[e] that the individual participant knows exactly where he stands with respect to the plan,' and the regulations promulgated under ERISA are designed to achieve that goal." *Leyda v. Allied Signal, Inc.*, 322 F.3d 199, 208 (2d Cir. 2003) (quoting *Bruch*, 489 U.S. at 118).

### 4. *Application*

First, Mount Mercy's argument that Snitselaar's breach of fiduciary duty claim is

barred because it duplicates her claim for benefits against Unum is misplaced. In *Silva*, the Eighth Circuit explained that duplicate recovery is barred, but alternate theories of liability are not barred. 762 F.3d at 727. Here, Snitselaar's claim against Unum for breach of the insurance policy is not duplicative of her claim against Mount Mercy for breach of fiduciary duties because each claim asserts a different theory of liability. Specifically, in Count I, Snitselaar seeks relief for Unum's denial of benefits under the Plan. In Count II, Snitselaar seeks equitable relief for Mount Mercy's breach of fiduciary duty. *See Jones*, 856 F.3d at 547 (finding that under ERISA, a claim for denial of benefits alleged a separate theory of liability from a claim for breach of fiduciary duty); *see also Silva*, 762 F.3d at 727-28 (finding that a claim under § 1132(a)(1)(B) for breach of terms of an insurance policy asserted a different theory of liability from a claim under § 1132(a)(3) for breach of fiduciary duty, and that the two claims were not duplicative). Accordingly, the court finds that Snitselaar's breach of fiduciary duty claim against Mount Mercy is not barred as duplicative of her claim against Unum.

Second, regardless of whether the Plan complied with the terms of § 509.2(7), there is no doubt that Mount Mercy and the Plan failed to comply with the requirements of § 1022 (listing the description and requirements for a summary plan description) and § 1024(b) (stating that an administrator "shall furnish" a summary plan description to each participant) by failing to provide Snitselaar with a summary plan description. *See Silva*, 762 F.3d at 721 ("Under ERISA, the plan administrator must distribute a summary plan description to all participants"); *Antolik v. Saks, Inc.*, 463 F.3d 796, 800 (8th Cir. 2006) ("Adequate disclosure of employee benefits is an important ERISA principle. To this end, the statute provides that an ERISA plan administrator . . . shall furnish a 'summary plan description' to plan participants and beneficiaries"); *Palmisano*, 190 F.3d at 888 ("The [summary plan description] is an important part of ERISA's reporting and disclosure requirements. It is a plain language summary of the plan's terms and benefits that must

be distributed to participants."). It is undisputed that Mount Mercy did not provide Snitselaar with the summary plan description. Accordingly, the court finds that Mount Mercy's breached its fiduciary duty.

Third, under the circumstances presented here Mount Mercy's breach of fiduciary duty by failing to provide Snitselaar with a summary plan description, *see* §§ 1022, 1024(b) caused Snitselaar harm. Mount Mercy's failure to provide Snitselaar a summary plan description caused Snitselaar harm because she had no notice that Gerard would cease to be a covered dependent if they divorced. Mount Mercy's failure to provide Snitselaar a summary plan description also caused Snitselaar harm because she was not provided with notice of the conversion rights with respect to Gerard and those conversion rights were not exercised. As a result, Snitselaar's benefits claim was denied by Unum, because due to their divorce, Gerard "was no longer eligible for coverage under the policies . . . [as] he was no longer an eligible dependent" and "was not covered on the date of his death." AR at 212.

Mount Mercy argues that it was not the cause of Snitselaar's harm because Snitselaar relied on advice from her divorce attorney that coverage would continue after the divorce, and therefore, neither she nor Gerard exercised their conversion rights. *See* Mount Mercy's Brief at 14. The court is unpersuaded by this argument. In support of its argument, Mount Mercy references a "Claim Document," in which a Unum employee documented a telephone conversation she had with Snitselaar. *See* AR at 91. The document states that "both [Snitselaar's] lawyer and Gerard's lawyer advised [Snitselaar] that per the decree, as the policy was in her name, she would be entitled to the benefits." *Id*. This document does not support Mount Mercy's argument that Snitselaar relied on her divorce attorney's advice to not exercise conversion rights or that the advice informed her that divorce from Gerard would make him ineligible under the group life insurance policy. Instead, the document simply demonstrates that, because the group policy was in

Snitselaar's name, under the divorce decree, she would be entitled to the benefits. The reason Snitselaar was harmed is that Mount Mercy failed to provide Snitselaar a summary plan description, which would have provided her with notice that Gerard would cease to be a covered dependent if they got divorced, and would have provided her notice of the conversion rights with respect to Gerard. Because Snitselaar was not provided the summary plan description as required by §§ 1022(b) and 1024(b)(1), the conversion rights provided for in the group policy were not timely exercised after her divorce from Gerard. Therefore, her claim for benefits was denied because Gerard was ineligible under the policy.

Mount Mercy also references a June 2015 email, where a Mount Mercy employee requested assistance from Unum in interpreting the insurance policy.[3] *See* AR at 160. The email states that Snitselaar's divorce was final in late February 2015 and that a co-worker "found something on page 21 that talks about a divorced spouse is not eligible." *Id*. The email further states:

> We would be grateful for any help you can provide to us on this. We should have checked it out when [Snitselaar] came into our office in March but when she said that her lawyer said it was ok as long as she continued to pay the premium we didn't do anything more.

*Id*. This email is too vague to support Mount Mercy's argument that Snitselaar relied on advice from her divorce attorney regarding Gerard's eligibility under the group policy and the failure to exercise the conversion rights. An email that states Snitselaar's "lawyer said it was ok" does not eliminate the harm caused by Mount Mercy's failure to provide Snitselaar with the summary plan description. *See Silva*, 762 F.3d at 721 (providing that a plan administrator breaches its fiduciary duty when it fails to provide a plan participant

_____

[3] A second email from a third-party, Mercer Health & Benefits, LLC, to a Unum representative reiterates the information provided in the Mount Mercy email. *See* AR at 160.

with the necessary information regarding a plan).

The court finds that Snitselaar has shown harm resulting from Mount Mercy's breach of its fiduciary duty. *See id.* at 722 ("To obtain relief under the surcharge theory, a plan participant is required to show harm resulting from the plan administrator's breach of a fiduciary duty"); *see also Amara*, 563 U.S. at 444 ("We believe that, to obtain relief by surcharge for violations of §§ [1022 and 1024(b)], a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation."). Accordingly, the court finds that Snitselaar is entitled to equitable "make-whole, monetary relief" in the amount of benefits owed under the Plan from Mount Mercy. *See Silva*, 762 F.3d at 724-25 (collecting cases).

### C. Attorney Fees

Snitselaar "requests attorney fees under the authority of 29 U.S.C. § 1132(g)(1)." Amended Complaint ¶ 44. In light of the discussion above, the court finds that Snitselaar may file an application for attorney fees. The instant order should not be construed in any way as implying that an award of attorney fees is proper.

### VI. CONCLUSION

In light of the foregoing, Defendant Unum Life Insurance Company of America's decision to deny benefits is **AFFIRMED**. Snitselaar's second claim for relief, Count II of the Amended Complaint (docket no. 25), against Defendant Mount Mercy University for breach of fiduciary duty is **VALID** and equitable relief is **GRANTED**. The Clerk of Court is **DIRECTED** to enter Judgment in favor of Snitselaar against Mount Mercy in the amount of $60,000. Snitselaar may file an application for attorney fees within **10 days of the issuance of the instant order**. Defendants may respond to any such application within **10 days** of the application. The Clerk of Court is **DIRECTED** to close this case for administrative purposes.

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2019.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA